# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ROBERT I. GULLEDGE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 10-0259-WS-M |
| | ) |
| **LINDA W. GULLEDGE,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This matter comes before the Court on plaintiff's Motion to Remand (doc. 12). The motion has been fully briefed and is now ripe.

**I.  Relevant Background.**

This case involves a family business dispute gone awry. Plaintiff, Robert I. Gulledge, maintains that his son, defendant Thomas W. Gulledge, and his son's mother, defendant Linda W. Gulledge, used fraudulent and otherwise unlawful means (such as falsely accusing him of mental incapacity and initiating conservatorship proceedings against him) to force him out of Citizens' Bank, Inc., the bank he founded, and Citizens' Capital Corporation, the holding company for Citizens' Bank. In an Amended Complaint (doc. 1-1) filed in Baldwin County Circuit Court on April 15, 2010, plaintiff interposed some eight causes of action in an undifferentiated manner against Thomas and Linda Gulledge, the two Citizens entities, and a person named Andrea N. Noonan.[1]  The claims asserted in the First Amended Complaint include causes of action for fraud (Count I), conspiracy to commit fraud (Count II), slander (Count III),

---

[1]  Noonan's connection to this matter is inscrutable from the pleadings. Aside from the bare act of naming her as a defendant, plaintiff omits any mention of Noonan, who she is, where she lives, how she is involved with Citizens' Bank or the Gulledge family, or what she did to harm him. Nonetheless, this case does not come before the Court on an *Iqbal / Twombly* motion at this time, so the undersigned does not have occasion to assess the sufficiency of the pleadings to state a cause of action against Noonan.

willful violation of privacy rights (Counts IV, V, and VIII), discrimination (Count VI), and injunction (Count VIII).[2]

The only claims relevant for purposes of the Motion to Remand are Counts IV and V, both of which are labeled "Willful Violation of Privacy Rights." The substantive allegations of Count IV consist of the following: "The Defendants wrongfully violated the Plaintiff's rights ***under Federal and Alabama banking regulations and statutes*** by using information from his private bank account at Citizens' Bank, Inc., in the deposition of Charles Morse." (Amended Complaint, ¶ 33 (emphasis added).) Similarly, the only direct allegation in Count V is that "[t]he Plaintiff's privacy rights were violated by the Defendants ***under Federal and Alabama Bank statutes and regulations*** in going through the Plaintiff's private desk and removing certain personal documents." (*Id.*, ¶ 35 (emphasis added).) The Amended Complaint does not specify which statutes and regulations plaintiff contends were violated, nor does it expressly delineate whether Counts IV and V are statutory or common-law claims for invasion of privacy and, if the former, whether the right of action is created by federal or state law.

On May 19, 2010, defendant Noonan filed a Notice of Removal (doc. 1) removing this action to this District Court pursuant to 28 U.S.C. §§ 1441 and 1446. Noonan asserted that federal subject matter jurisdiction was proper because in Counts IV and V, "[p]laintiff asserts claims under various federal banking statutes and regulations" (doc. 1, ¶ 5), thereby giving rise to federal question jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff responded by filing a Motion to Remand, premised on the notion that Counts IV and V do not confer federal jurisdiction and that remand is therefore required.[3]

---

[2] The Amended Complaint is misnumbered, inasmuch as there is no listed Count VII and plaintiff has instead designated both the injunction count and the third privacy rights count as "Count VIII." Also, for purposes of clarity, the Court notes that Count VI is not framed as a civil rights claim that might sustain federal jurisdiction; rather, it merely alleges that defendants violated the Citizens entities' by-laws and policies by not giving him notice of the board meeting at which he was sacked, not granting him an exit interview, and locking him out of his office. As such, Count VI lacks jurisdictional significance, despite its "discrimination" tag, and does not give rise to a federal question that might independently support removal.

[3] In the alternative to the jurisdictional argument, plaintiff's Motion to Remand asserts that there was a procedural defect in removal because defendants did not unanimously, expressly consent on the record to removal. Plaintiff is correct that the unanimity rule contemplates that "each defendant must join in the removal by signing the notice of removal or
(Continued)

**II.     Analysis.**

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must show the existence of federal jurisdiction. *See, e.g., Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009) ("On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction."); *Thomas v. Bank of America Corp.*, 570 F.3d 1280, 1282 n.4 (11th Cir. 2009) ("Bank of America, as the party removing the case to the district court, bore the burden of establishing federal subject matter jurisdiction."). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. *See Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008) ("Any doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court.").[4]

**A.     *The "Face of the Complaint" Test.***

Here, the sole jurisdictional foothold identified by the removing defendant is the existence of a federal question in Counts IV and V.[5] Congress has conferred upon federal

---

by explicitly stating for itself its consent on the record, either orally or in writing, within the 30-day period prescribed in 28 U.S.C. § 1446(b)." *Leaming v. Liberty University, Inc.*, 2007 WL 1589542, *2 (S.D. Ala. June 1, 2007) (citations omitted). But plaintiff is incorrect in his assertion that defendants failed to comply with that requirement here. The Notice of Removal signed by counsel of record for <u>all</u> defendants expressly states that each of the other four defendants (on whose behalf their attorneys of record are authorized to speak) consent to removal. (Doc. 1, ¶ 8.) As such, plaintiff's argument that the unanimity requirement is not satisfied here because of lack of explicit consent by the other defendants is meritless.

[4]     *See also Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir. 2003) (recognizing that "removal statutes should be construed narrowly, with doubts resolved against removal"); *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction); *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (expressing preference for remand where removal jurisdiction is not absolutely clear); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (uncertainties regarding removal are resolved in favor of remand).

[5]     Noonan has not suggested that diversity jurisdiction lies pursuant to 28 U.S.C. § 1332, nor could she credibly do so given the unrebutted allegations in the Amended Complaint that plaintiff and multiple defendants are Alabama citizens. *See generally Darden v. Ford*
(Continued)

district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The test ordinarily applied for determining whether a claim arises under federal law is whether a federal question appears on the face of the plaintiff's well-pleaded complaint." *Connecticut State Dental*, 591 F.3d at 1343 (where complaint alleges only state law claims, there is no § 1331 jurisdiction under well-pleaded complaint rule); *see also Adventure Outdoors*, 552 F.3d at 1295 ("In determining whether jurisdiction exists under 28 U.S.C. § 1331, a court must look to the well-pleaded complaint alone.").[6]

From the face of Robert Gulledge's well-pleaded Amended Complaint, the Court cannot discern whether Counts IV and V allege federal claims at all. Defendants insist that they do, reasoning that "Plaintiff alleges his rights were violated by defendants under federal banking statutes and regulations; clearly, a federal claim." (Doc. 15, at 4 (emphasis omitted).)[7] But the ambiguous language of Counts IV and V does not allow for such decisiveness. Both causes of action are labeled "Willful Violation of Privacy Rights."[8] Both claims offer generic references

---

*Consumer Finance Co.*, 200 F.3d 753, 755 (11th Cir. 2000) (to qualify for diversity jurisdiction, complaint must establish "complete diversity of the parties' citizenship and an amount in controversy exceeding $75,000").

[6] The general rule is that § 1331 jurisdiction exists only where federal law creates the claim in question. *See Connecticut State Dental*, 591 F.3d at 1343 ("As a general rule, a case arises under federal law only if it is federal law that creates the cause of action.") (citations omitted).

[7] In his Motion to Remand, plaintiff characterizes Counts IV and V as claims for "violation of the state law tort of invasion of privacy," not federal claims. (Doc. 12, at 5.) Of course, it is the language of the Amended Complaint at the time of removal that governs, not how plaintiff might describe those claims after the fact. *See generally Adventure Outdoors*, 552 F.3d at 1294-95 ("The existence of federal jurisdiction is tested at the time of removal. … [T]he defendants must show that the plaintiffs' complaint, as it existed at the time of removal, provides an adequate basis for the exercise of federal jurisdiction.").

[8] Defendants theorize that a "willful violation of privacy rights" cause of action is "substantively different" from one for "violation of privacy rights." (Doc. 15, at 4.) However, they do not explain how or why, much less cite to authorities recognizing such a distinction. It is not at all clear why a claim of "willful violation of privacy rights" would necessarily be federal in character, as contrasted with a state law "violation of privacy rights" theory. For aught the pleadings show, the "willful" tag may merely signify plaintiff's desire to pursue punitive
(Continued)

to federal and state banking statutes and regulations as a whole, without identifying particular sections that plaintiff contends were violated, much less any provision giving rise to a private cause of action under federal law to enforce such violations. Are Counts IV and V common-law invasion of privacy claims brought under Alabama law? Are they statutory claims brought under federal law? Are they statutory claims brought under state law? Is there even such a thing as a cause of action for "willful violation of privacy rights" created by federal banking statutes or regulations? Defendants endeavor to dodge all of these questions by stating that they "are not responsible for making plaintiff's case or guessing every Federal banking statute and regulation plaintiff could recover under." (Doc. 15, at 4 n.5.)[9] That may be true, but defendants unquestionably <u>are</u> responsible for establishing the existence of federal jurisdiction since they are the ones who have invoked it. By asking this Court to guess or assume that Counts IV and V are

---

damages for the invasion of privacy claims in Counts IV and V, rather than an intent to bring a substantively different cause of action rooted in federal statutory law rather than Alabama common law. The Court cannot and will not follow such unwarranted leaps of logic to conjure up a jurisdictional basis where none appears.

[9] Defendants' position is not advanced by their submission of extrinsic exhibits (separate and apart from the pleadings) through which they paradoxically seek to show that a federal question is presented "on the face of the complaint." In the first place, it is incongruous at best, and nonsensical at worst, to suggest that in determining whether a federal question is presented on the face of the complaint, the Court should consult other documents outside the pleadings. One of the cases on which defendants rely for this proposition (*i.e.*, that affidavits, declarations, depositions and other exhibits are permissible to establish removal jurisdiction) recognizes a diversity / federal question distinction on this point. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 765 n.20 (11th Cir. 2010) ("Our discussion is limited to removal based on diversity jurisdiction. By contrast, a defendant may remove on the basis of federal question jurisdiction ***only where that question appears on the face of the plaintiff's complaint***.") (emphasis added). In the second place, even if these exhibits are properly considered, they show only that Robert Gulledge sent an identical letter to a host of federal regulators and state banking officials complaining that defendants had acted fraudulently and invaded his privacy. Far from alleging violation of federal laws, the letter mentions only, in the vaguest of terms, "a violation of privacy, conspiracy laws, and the privacy policy" of Citizens' Bank. (Doc. 15-1, at Exh. A.) Contrary to defendants' argument, these exhibits shed no light on whether the claims presented on the face of the Amended Complaint are federal in nature. Plaintiff's letters did not invoke FDIC authority in a focused way; rather, he blanketed every federal and state regulator/agency he could think of with a copy of his letter in hopes that someone would take up his cause. This conduct reveals precious little insight into the true nature of Counts IV and V.

actually federal causes of action, as opposed to the other reasonable possibilities outlined above, defendants fall short of that requirement. More fundamentally, defendants' line of argument would not only abdicate their burden on removal, but would also turn on its head the well-established principle that all doubts are resolved in favor of remanding an action to state court.[10]

In short, the Court finds that there is no federal question presented on the face of the Amended Complaint. Therefore, removal jurisdiction cannot be supported on that basis.

### B. *The "Substantial Federal Question" Test.*

In the alternative to their "face of the complaint" theory, defendants assert that federal jurisdiction under § 1331 is supported in this case by the "substantial-federal-question jurisdiction doctrine."

The law is clear that, even in the absence of a federally created cause of action, "in limited circumstances, federal-question jurisdiction may be also be available if a substantial, disputed, question of federal law is a necessary element of a state cause of action." *Jairath v. Dyer*, 154 F.3d 1280, 1282 (11th Cir. 1998); *see also Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) (reasoning that "a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues"). In this Circuit, the legal standard for identifying this "slim category of cases" is "whether the plaintiffs' state-law tort claims necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Adventure Outdoors*, 552 F.3d at 1296 (citations and internal quotation marks omitted). Defendants' contention is that, even if (as this Court must find for

---

[10] Elsewhere in their brief, defendants make explicit their desire to flip the presumption around to weigh against remand, rather than in favor of it. In particular, defendants balk that plaintiff's failure to plead with specificity his legal theory in Counts IV and V, and to identify the statutes under which he is proceeding, "should be construed against his interests and in favor of removal." (Doc. 15, at 10.) This argument urges the Court to dispense with well-settled Circuit law and to declare that, when in doubt about the propriety of removal, a federal district court should deny remand because it is the plaintiff's fault for not pleading his claims in greater detail in the first place. To so hold would be to ignore binding precedent and invite reversal on appeal.

removal purposes) Counts IV and V are properly construed as state law causes of action, removal is proper because plaintiff must prove a violation of federal banking statutes and regulations in order to prevail. The undersigned disagrees.

"[F]ederal courts have rejected the expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door." *Adventure Outdoors*, 552 F.3d at 1300 (citation and internal quotation marks omitted); *see also Paulet v. Farlie, Turner & Co.*, 2010 WL 2232662, *3 (S.D. Fla. June 2, 2010) ("It takes more than a federal issue to open the door to 'arising under' jurisdiction."); *Certified Enterprises, LLC v. Dauphin Creek Apartments, LLC*, 2009 WL 2870506, *8 (S.D. Ala. Sept. 3, 2009) ("Merely raising a contested federal issue in a [state law] complaint will not necessarily confer federal jurisdiction."). Rather, there is a "strong, if not dispositive, emphasis on the character of the disputed federal issue in evaluating the propriety of substantial federal question jurisdiction." *Adventure Outdoors*, 552 F.3d at 1299. Where, for example, "[c]lear federal guidance exists on every question of federal law relevant to" the plaintiff's state law claims, those questions of federal law do not implicate a "substantial" federal interest sufficient to support the exercise of federal jurisdiction. *Id.* at 1301-02; *see also Paulet*, 2010 WL 2232662, at *3 (federal issue was not "substantial" where resolution of plaintiff's claims required application of clearly defined federal law to the parties' factual arguments); *Donaldson v. GMAC Mortg. LLC*, 2010 WL 381838, *5 (M.D. Ga. Jan. 26, 2010) (no substantial federal question where parties did not dispute meaning of relevant federal statutes, clear federal guidance existed on all questions of federal law at issue, state court application of this federal law would not threaten federal interest in uniformity and consistency, and federal legal issues would not be dispositive of the case in any event).

Applying these principles to Robert Gulledge's Amended Complaint, the Court readily concludes that substantial federal question jurisdiction is lacking. For starters, because of the vagueness with which the Amended Complaint is pleaded, neither defendants nor this Court has any inkling whether a pure question of federal law is presented in Counts IV and V, whether clear federal guidance exists on that question, or whether there is any meaningful federal interest in having a federal court (rather than a state court) apply the federal banking statutes and

regulations at issue.[11] There is simply no indication that any federal issues joined in Counts IV and V might call upon some special experience, solicitude, and hope of uniformity that a federal forum offers on federal issues, so as to constitute "substantial" issues of federal law. Furthermore, the Court cannot find on these pleadings that resolution of federal issues would be case-dispositive, or even claim-dispositive of anything in this case. As noted *supra*, Counts IV and V are an undifferentiated mishmash of Alabama common law, Alabama statutory and regulatory provisions, and federal statutory and regulatory provisions. The nexus among and interaction between these various bodies of law for purposes of Counts IV and V cannot be determined with precision at this time; however, there is at least a reasonable likelihood that those causes of action will turn on application of Alabama common law, statutes and regulations, irrespective of how the federal issues embedded therein may be resolved.[12] Thus, it cannot be concluded with any degree of certainty that a federal question is even "necessary" to adjudication of Counts IV and V, much less that any such question is "substantial."

---

[11] In that regard, the Court rejects as speculative defendants' assertion that "Counts IV and V will turn solely on interpretation of federal and state banking statutes and regulations, not fact questions." (Doc. 15, at 9.) Without knowing which statutes and regulations are in play, much less what the elements of proof of those statutes and regulations might be, it would be precipitous in the extreme to embrace defendants' assumption that there are no fact issues presented. Besides, defendants' argument misses the point. What matters under an *Adventure Outdoor* analysis is not whether the question is legal or factual, but whether any federal legal issues are sufficiently unsettled or arcane that there is an advantage to having a federal court decide them. On this record, and with these pleadings, there is absolutely no way to gauge the types of legal issues presented, much less to assess the extent of federal guidance that may light the path for any court to resolve them.

[12] To elaborate on this point, it is not clear whether or how any violation of federal banking laws or regulations by defendants would be dispositive of state law invasion of privacy claims set forth in Counts IV and V. Defendants themselves recognize the difficulty in synching up plaintiff's assertion that defendants violated federal banking laws and regulations with the elements of a state law invasion of privacy claim. (*See* doc. 15, at 4-5.) In other words, deciding whether defendants did or did not violate federal banking statutes and regulations does not appear inexorably to decide Counts IV and V, and may be nothing more than an ancillary sidelight (if, indeed, it is germane at all) to that ultimate determination. On these non-specific pleadings, we simply do not know how (if at all) any federal violation fits into plaintiff's theory of liability in Counts IV and V. It would amount to reckless speculation to assume that the federal issue will be dispositive of those causes of action.

So the "substantial federal question" analysis ends where it began. This type of federal jurisdiction is extremely narrow. *See Donaldson*, 2010 WL 381838, at *3 ("the rule is a narrow one and only applies to a special and small category of cases") (citations and internal quotation marks omitted). Based on the pleadings and arguments presented, the Court finds that defendants have not met their burden of showing that a substantial federal question is necessarily presented in Counts IV and V. There is no reason to believe that Counts IV and V involve uncertain issues of federal law that would be most appropriately addressed by a federal court rather than a state court based on considerations of experience, specialization and uniformity. Nor is there any particular reason to believe that adjudication of the federal issues embedded in Counts IV and V would be dispositive of those causes of action, or that doing so would necessarily make a difference in how those claims are resolved. And the Court unequivocally resists defendants' backwards suggestion that the ambiguous and imprecise manner in which Robert Gulledge pleaded Counts IV and V in the Amended Complaint should be held against him for removal purposes, with his pleading construed in the manner most conducive to federal jurisdiction. Simply put, the narrow doctrine of substantial federal question jurisdiction has no application here, and cannot preserve a federal forum for this lawsuit.

**III.  Conclusion.**

Whatever else may be said, defendant Noonan jumped the gun by removing the case when she did, latching onto vague allusions to unspecified federal statutes and regulations in the Amended Complaint without first undertaking discovery to determine what those provisions are, how they relate to Counts IV and V, and what specific theories of relief plaintiff is pursuing. As it stands, the Amended Complaint is drafted in such an opaque manner that one cannot discern from mere oblique references to federal banking statutes and regulations what types of claims Robert Gulledge is actually asserting, and how (if at all) federal questions play into those claims. That's not to say, of course, that a plaintiff should be rewarded for his ambiguity. It is to say, however, that when confronted with a pleading that may or may not present a federal claim, and that may or may not necessarily involve a substantial question of federal law, a defendant cannot preemptively remove the case to federal court and ask the federal court to resolve those jurisdictional uncertainties in favor of removal because the plaintiff should have done a better job in drafting his complaint. Rather, the defendant should avail itself of available discovery tools to ferret out and pin down the nature of the claims, and <u>then</u> remove the case if that additional

information establishes a federal cause of action or a substantial federal question. In other words, a defendant in Noonan's position should ask questions first, and shoot later, not the other way around.

For all of the foregoing reasons, the Motion to Remand (doc. 12) is **granted**, and this action is **remanded** to the Circuit Court of Baldwin County, Alabama for further proceedings.

DONE and ORDERED this 3rd day of September, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE